UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------

**FREEDOM MORTGAGE CORPORATION,**

        **Plaintiff,**

    **- against -**

**RICHARD TSCHERNIA,**

        **Defendant.**

---------------------------------------------

Case No. 1-20-cv-01206

Hon. Alison J. Nathan


# PLAINTIFF FREEDOM MORTGAGE CORPORATION'S OPPOSITION TO DEFENDANT RICHARD TSCHERNIA'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT


Louis L. Chodoff (admitted *pro hac vice*)
Christopher J. Kelly
Tara L. Humma (admitted *pro hac vice*)
BALLARD SPAHR LLP
210 Lake Drive East, Suite 200
Cherry Hill, NJ 08002
(856) 761-3400

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................ 1

STATEMENT OF FACTS ...................................................................................................... 2

ARGUMENT .......................................................................................................................... 2

I.      LEGAL STANDARD UNDER RULE 12(B)(6) ....................................................... 2

II.     FREEDOM MORTGAGE HAS STATED A CLAIM FOR UNJUST
        ENRICHMENT ......................................................................................................... 3

III.    FREEDOM MORTGAGE HAS STATED A CLAIM FOR CONVERSION ................. 5

        A.      Freedom's Conversion Claim Is Distinct From Its Breach Of Contract
                Claim.............................................................................................................. 5
        B.      Freedom's Conversion Claim Concerning The "Intangible" Phone
                Numbers Should Not Be Dismissed .............................................................. 6
        C.      Freedom Was Not Required To Demand That The Phone Numbers Be
                Returned To State A Valid Claim Of Conversion .......................................... 8

IV.     FREEDOM MORTGAGE HAS STATED A CLAIM FOR FRAUD .............................. 9

V.      FREEDOM MORTGAGE HAS STATED A CLAIM FOR UNFAIR
        COMPETITION ....................................................................................................... 13

VI.     FREEDOM MORTGAGE HAS STATED A CLAIM FOR BREACH OF
        CONTRACT ............................................................................................................ 14

        A.      Breach Of Contract Standard ..................................................................... 14
        B.      The Relevant Phone Numbers Are Purchased Assets.................................. 14
        C.      Defendant Breached The APA By Violating Section 4.12 ............................ 16
        D.      Freedom Has Sufficiently Plead A Claim For Indemnification Under the
                APA.............................................................................................................. 17
        E.      Defendant Was Not Released By Way Of The Mutual Release Agreement
                And Therefore, Freedom Has Stated A Claim For Indemnification................ 19
        F.      Tschernia's Restrictive Covenants Are Enforceable And Therefore,
                Freedom Has Stated a Breach of Contract Claim ....................................... 21

                1.      Scrivener Error Issue....................................................................... 21
                2.      The EA Restrictive Covenant Is Enforceable .................................. 23

CONCLUSION..................................................................................................................... 25

DMEAST #42000968 v3

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*Air Atlanta Aero Eng'g Ltd. v. SP Aircraft Owner I, LLC*,
    637 F. Supp. 2d 185 (S.D.N.Y. 2009)........................................................................4

*Am. Lecithin Co. v. Rebmann*,
    No. 12-CV-929 (VSB), 2020 U.S. Dist. LEXIS 131609 (S.D.N.Y. July 24,
    2020) .........................................................................................................................6

*American Fin. Servs. Group, Inc. v. Treasure Bay Gaming & Resorts, Inc.*,
    No. 99 Civ. 1068, 2000 U.S. Dist. LEXIS 8668 (S.D.N.Y. June 23, 2000).............8

*Arista Records, LLC v. Doe 3*,
    604 F.3d 110 (2d Cir. 2010)...................................................................................3

*Bancorp Servs., LLC v. Am. Gen. Life Ins. Co.*,
    2016 U.S. Dist. Lexis 18330 (S.D.N.Y. Feb. 11, 2016) .......................................13

*Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*,
    98 F.3d 13 (2d Cir. 1996).......................................................................................9

*Bytemark, Inc. v. Xerox Corp.*,
    342 F. Supp. 3d 496 (S.D.N.Y. 2018)..............................................................13, 14

*Cmty. Voice Line, L.L.C. v. Great Lakes Commun. Corp.*,
    18 F. Supp. 3d 966 (N.D. Iowa 2014).....................................................................7

*Command Cinema Corp. v. VCA Labs, Inc.*,
    464 F. Supp. 2d 191 (S.D.N.Y. 2006)..................................................................5, 6

*Ellington Credit Fund, LTD. v. Select Portfolio Servicing, Inc.*,
    837 F. Supp. 2d 162 (S.D.N.Y. 2011)............................................................5, 9, 14

*Franze v. Bimbo Foods Bakeries Distribution*, *LLC*,
    No. 7:17-cv-03556, 2019 U.S. Dist. LEXIS 43432 (S.D.N.Y. Mar. 15, 2019)........3

*Friedman v. Wahrsager*,
    848 F. Supp. 2d 278 (E.D.N.Y. 2012) ...................................................................8

*In re G+G Retail, Inc.*,
    No. 06-10152(RDD), 2010 Bankr. LEXIS 465 (Bankr. S.D.N.Y. Feb. 24,
    2010) .......................................................................................................................16

*Goldman v. Belden*,
    754 F.2d 1059 (2d Cir. 1985)................................................................................3

*Graham v. Select Portfolio Servicing, Inc.*,
    156 F. Supp. 3d 491 (S.D.N.Y. 2016)............................................................................5

*Grgurev v. Licul*,
    229 F. Supp. 3d 267 (S.D.N.Y. 2017)............................................................................3

*Harsco Corp. v. Segui*,
    91 F.3d 337 (2d Cir. 1996)............................................................................................14

*Koch v. Christie's Int'l PLC*,
    699 F.3d 141 (2d Cir. 2012)......................................................................................2, 14

*Maniolos v. United States*,
    741 F. Supp. 2d 555 (S.D.N.Y. 2010)..........................................................................16

*Mathias v. Jacobs*,
    167 F.Supp.2d 606 (S.D.N.Y. 2001)............................................................................24

*In re Motors Liquidation Co.*,
    460 B.R. 603 (Bkrtcy S.D.N.Y. Nov. 28, 2011)..........................................................22

*Murray Eng'g P.C. v. Remke*,
    2018 U.S. Dist. LEXIS 134404 (S.D.N.Y. Aug. 9, 2018).................................4, 5, 14

*Negrete v. Citibank, N.A.*,
    187 F. Supp. 3d 454 (S.D.N.Y. 2016)....................................................................17, 18

*Payment All. Int'l, Inc. v. Ferreira*,
    530 F. Supp. 2d 477 (S.D.N.Y. 2007)..........................................................................23

*Poller v. BioScrip, Inc.*,
    974 F. Supp. 2d 204 (S.D.N.Y. 2013)............................................................................4

*Pure Power Boot Camp, Inc. v. Warrior Fitness Boot Camp, LLC*,
    813 F. Supp. 2d 489 (S.D.N.Y. 2011)..............................................................12, 20, 21

*Ruotolo v. City of New York*,
    514 F.3d 184 (2d Cir. 2008)............................................................................................2

*Salonclick LLC v. Superego Mgmt. LLC*,
    2017 U.S. Dist. LEXIS 6871 (S.D.N.Y. Jan. 18, 2017)................................................6

*SEC v. Cavanagh*,
    445 F.3d 105 (2d Cir. 2006)..........................................................................................12

*Senior Health Ins. Co. v. Beechwood Re Ltd.*,
    345 F. Supp. 3d 515 (S.D.N.Y. 2018)..........................................................................11

*Serdarevic v. Centex Homes,*
LLC, 760 F. Supp. 2d 322 (S.D.N.Y. 2010) ............................................................23

*SPCP Grp., LLC v. Eagle Rock Field Servs., LP,*
2013 U.S. Dist. LEXIS 12729 (S.D.N.Y. Jan. 30, 2013) ........................................22

*Staton Holdings v. First Data Corp.,*
No. 3:04-CV-2321-P, 2005 U.S. Dist. LEXIS 47190 (N.D. Tex. May 11,
2005) .........................................................................................................................7

*Travelers Indem. Co. v. Scor Reinsurance Co.,*
62 F.3d 74 (2d Cir. 1995) ........................................................................................23

*Twelve Sixty LLC v. Extreme Music Library Ltd.,*
No. 17-cv-1479 (PAC), 2018 U.S. Dist. LEXIS 7026 (S.D.N.Y. Jan. 9, 2018) ......12

*Wiseman v. Groep, N.V.,*
No. 16-cv-07587 (AJN), 2017 U.S. Dist. LEXIS 161465 (S.D.N.Y. Sep. 28,
2017) .........................................................................................................................17

**State Cases**

*Genesee Val. Trust Co. v Waterford Group,*
LLC, 130 A.D.3d 1555 (2015) ................................................................................24

*Misys Intern. Banking Systems, Inc. v. Two Four Systems, LLC,*
6 Misc.3d 1004(A), 2004 WL 3058144, 2004 N.Y. Misc. LEXIS 2865
(N.Y.Sup.Ct. 2004) .................................................................................................23

*Thyroff v. Nationwide Mut. Ins. Co.,*
2007 NY Slip Op 2442, 8 N.Y.3d 283, 832 N.Y.S.2d 873, 864 N.E.2d 1272 .....6, 7

**Rules**

Fed. R. Civ. P. 8(a)(2) ....................................................................................................2

Fed. R. Civ. P. 8(d)(2) ....................................................................................................4

Fed. R. Civ. P. 9(b) ....................................................................................................9, 11

Fed. R. Civ. P. 12(b)(6) ...............................................................................................1, 2

iv

## PRELIMINARY STATEMENT

Freedom Mortgage Corporation ("Plaintiff" or "Freedom") seeks damages from Defendant Richard Tschernia ("Defendant" or "Tschernia") resulting from Defendant's breach of two contracts and for his tortious and fraudulent behavior in his dealings with Freedom.

Defendant's Rule 12(b)(6) motion is ill-premised. The well-known test of pleading sufficiency requires the Court to accept as true all well pled facts and the reasonable inferences flowing therefrom. Defendant challenges as "conclusory" many of the elemental facts pled by Freedom claiming that Freedom has not pled evidentiary details about those facts.

Freedom, however, is not obliged to do so at the pleading stage (with the exception of claims of fraud). Freedom has alleged by way of a detailed, 114 paragraph Amended Complaint, that its former employee whose business was previously purchased by Freedom:

- violated the terms of the applicable Asset Purchase Agreement ("APA") by (1) failing to transfer ownership of the Phone Numbers, the 800 Number, and the 718 Number (as defined in the Amended Complaint) (collectively "the Relevant Phone Numbers"); and (2) failing to indemnify Freedom for defective loans under the indemnification provisions of the APA;

- violated the terms of his Employment Agreement ("EA") by not abiding by his restrictive covenants; and

- failed to transfer ownership of the Relevant Phone Numbers and then engaged in a scheme of misappropriation, bad faith, misrepresentation, and fraud in order to ensure he would retain the Relevant Phone Numbers to unfairly compete with Freedom and take Freedom's leads and customers and bring them to a competitor.

1

The facts alleged and the inferences that flow from them certainly satisfy Freedom's pleading burden, including the heightened burden for the fraud count contained in the Amended Complaint ("AC"). Throughout Defendant's moving papers, Defendant makes references to facts and inferences which are not included in the AC and which must not be considered. All facts in the AC must be accepted as true and all inferences must be made in favor of Freedom.

Additionally, Freedom has sufficiently alleged facts to support its claims of unjust enrichment, fraud, conversion, and unfair competition wherein the facts alleged are sufficiently different from the facts supporting Freedom's breach of contract claims. Alternatively, Freedom should also be permitted to plead in the alternative at this stage of the litigation.

Because Freedom has sufficiently plead all five of the counts brought by way of the AC, this Court should deny Defendant's motion.

## STATEMENT OF FACTS

Plaintiff relies on and incorporates herein by reference the facts alleged in Plaintiff's AC, Docket Entry No. 25.

## ARGUMENT

## I.    LEGAL STANDARD UNDER RULE 12(B)(6)

In ruling on a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted, the Court must accept as true all factual statements alleged in the complaint and draw all reasonable inferences in favor of the non-moving party. *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012); *see also Ruotolo v. City of New York*, 514 F.3d 184, 188 (2d Cir. 2008).

Under the Federal Rules of Civil Procedure, a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *Fed. R. Civ. P.* 8(a)(2). As the Second Circuit has stated, "although *Twombly* and *Iqbal* require factual

DMEAST #42000968 v3

amplification where needed to render a claim plausible, . . .*Twombly* and *Iqbal* [do not] require the pleading of specific evidence or extra facts beyond what is needed to make the claim plausible." *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120-21 (2d Cir. 2010). The Court does "not weigh the evidence that might be presented at a trial but merely [to] determine[s] whether the complaint itself is legally sufficient." *Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir. 1985).

As set forth more fully below, Freedom has sufficiently plead each and every claim set forth in the AC and Defendant's motion to dismiss should be denied.

## II.   FREEDOM MORTGAGE HAS STATED A CLAIM FOR UNJUST ENRICHMENT

To state a *prima facie* case of unjust enrichment, Freedom must allege that "(1) the other party was enriched, (2) at that party's expense, and (3) that it is against equity and good conscience to permit the other party to retain what is sought to be recovered." *Grgurev v. Licul*, 229 F. Supp. 3d 267, 294 (S.D.N.Y. 2017) *quoting Georgia Malone & Co. v. Rieder*, 19 N.Y.3d 511, 973 N.E.2d 743, 746, 950 N.Y.S.2d 333 (N.Y. 2012).

Defendant does not challenge that Freedom has plead the prima facie elements of the claim of unjust enrichment. Defendant argues instead that Freedom cannot maintain a claim for unjust enrichment along with a claim for breach of contract. Defendant cites *Franze v. Bimbo Foods Bakeries Distribution* in support of his argument that Freedom may not maintain a claim for unjust enrichment where "there is a valid and enforceable contract between the parties, and the subject matter of the unjust enrichment claim is covered by the contract…" *Franze v. Bimbo Foods Bakeries Distribution*, *LLC*, No. 7:17-cv-03556, 2019 U.S. Dist. LEXIS 43432, at *6-7 (S.D.N.Y. Mar. 15, 2019). However, Defendant fails to properly consider controlling case law which holds that if the parties dispute whether there is an enforceable or applicable written

3

contract, a Plaintiff may plead unjust enrichment in the alternative. In fact, the case cited by

Defendant specifically states "[I]n circumstances where 'the parties dispute whether there is an

enforceable written contract at all...Rule 8(d)(2) of the Federal Rules of Civil Procedure permits

a plaintiff to plead claims for breach of contract and, in the alternative, claims for...unjust

enrichment.'" *Id. quoting ImagePoint, Inc. v. JPMorgan Chase Bank, Nat. Ass'n*, 27 F. Supp. 3d

494, 516 (S.D.N.Y. 2014) (*citing Phillips v. Reed Grp., Ltd.*, 955 F. Supp. 2d 201, 243

(S.D.N.Y.2013); *see also Poller v. BioScrip, Inc.*, 974 F. Supp. 2d 204, 236 (S.D.N.Y. 2013)

("where there is a 'bona fide dispute as to the existence of a contract, or where the contract does

not cover the dispute in issue, a plaintiff may proceed upon a theory of quasi contract as well as

contract, and will not be required to elect his or her remedies.'") (internal citations omitted).  In

order for Defendant's dismissal of Freedom's unjust enrichment claim to be proper on these

grounds, there must be a "undisputedly valid and enforceable written contract [that] governs the

same subject matter." *Air Atlanta Aero Eng'g Ltd. v. SP Aircraft Owner I, LLC*, 637 F. Supp. 2d

185, 196 (S.D.N.Y. 2009). In *Murray Eng'g P.C. v. Remke*, this Court held that because the party

moving for dismissal questioned the existence and validity of the agreements, the court could not

find that the Plaintiff's unjust enrichment claim was duplicative and could not dismiss same for

that reason. *Murray Eng'g P.C. v. Remke*, 2018 U.S. Dist. LEXIS 134404, at *32-34 (S.D.N.Y.

Aug. 9, 2018).

Defendant cannot have his proverbial cake and eat it too. Defendant has challenged the

provisions of the APA which are in question and has made the argument that the phone numbers

in question were never covered or governed by the APA. He has also argued that the restrictive

covenants contained in the EA are invalid and unenforceable. Defendant is a party to this action

and is challenging the applicability and enforceability of the contracts at issue. This is exactly the

4

type of situation where quasi-contract claims, including claims of unjust enrichment, have been permitted to proceed. As such, dismissal of the unjust enrichment claim is not warranted on these grounds nor at this early stage of the litigation.

## III.   **FREEDOM MORTGAGE HAS STATED A CLAIM FOR CONVERSION**

A plaintiff must plead the following to show a *prima facie* claim of conversion: "'(1) the property subject to conversion is a specific identifiable thing; (2) plaintiff had ownership, possession or control over the property before its conversion; and (3) defendant exercised an unauthorized dominion over the thing in question, to the alteration of its condition or to the exclusion of the plaintiff's rights.'" *Ellington Credit Fund, LTD. v. Select Portfolio Servicing, Inc.*, 837 F. Supp. 2d 162, 204 (S.D.N.Y. 2011) *quoting Moses v. Martin*, 360 F. Supp. 2d 533, 541 (S.D.N.Y. 2004) (internal citation and quotation marks omitted).

### A.   **Freedom's Conversion Claim Is Distinct From Its Breach Of Contract Claim**

Although an action for conversion cannot be validly maintained where damages are merely being sought for breach of contract, a plaintiff's claim for conversion will survive if plaintiff alleges acts that were independently unlawful or wrongful as opposed to mere violations of contractual rights. Even where a plaintiff's conversion claim was based on many of the same factual allegations as the breach of contract claim, the conversion claim survived where there was an allegation of willful and malicious conduct, namely, a knowing participation in the conversion. *Murray Eng'g P.C. v. Remke*, 2018 U.S. Dist. LEXIS 134404, at *38-39 (S.D.N.Y. Aug. 9, 2018); *see also Graham v. Select Portfolio Servicing, Inc.*, 156 F. Supp. 3d 491, 512 (S.D.N.Y. 2016); *Command Cinema Corp. v. VCA Labs, Inc.*, 464 F. Supp. 2d 191, 199 (S.D.N.Y. 2006).

Here, Freedom's conversion claim is distinct from its breach of contract claims because Freedom has specifically plead that Defendant's acts were done in bad faith and were otherwise

wrongful independent of the breach of the contract. (AC ¶¶35-38, 40, 87-93). Freedom has alleged

willful and malicious conduct by Defendant in his scheme to misappropriate the Relevant Phone

Numbers by way of fraud. *Id.* Freedom also alleges that Defendant then willfully converted the

Relevant Phone Numbers with the intent to defraud and steal the Relevant Phone Numbers,

leads, and customers from Freedom. As such, Freedom's claim for conversion should not be

dismissed as duplicative of its breach of contract claims.

    **B.**    **Freedom's Conversion Claim Concerning The "Intangible" Phone Numbers Should Not Be Dismissed**

       Previously, there had been a prohibition on claims of conversion related to intangible

property. However, in recent years, many courts, including courts in New York, have shifted

course and permitted claims of conversion with regard to different types of intangible property

due to the fact that world is becoming more technologically advanced and therefore, intangibles

are becoming increasingly more valuable. *See, e.g., Am. Lecithin Co. v. Rebmann*, No. 12-CV-

929 (VSB), 2020 U.S. Dist. LEXIS 131609, at *47-48 (S.D.N.Y. July 24, 2020) (holding that

"New York law does permit a plaintiff to sue for conversion based on interference with a domain

name. This conclusion is bolstered by the fact that the Court of Appeals' decision in *Thyroff* was

motivated by the need for 'the common law to respond . . . to the demands of commonsense [sic]

justice in an evolving society.'"); *Salonclick LLC v. Superego Mgmt. LLC*, 2017 U.S. Dist.

LEXIS 6871, at *10 (S.D.N.Y. Jan. 18, 2017) ("Plaintiff has stated a claim for conversion of its

domain name and social media accounts under New York law"); *Triboro Quilt Mfg. Corp. v.

Luve LLC*, No. 10 CV 3604 (VB), 2014 U.S. Dist. LEXIS 57186, at *25-26 (S.D.N.Y. Mar. 18,

2014) (explaining that "New York courts recognize exceptions when the rightful owner

of intangible property is prevented from creating or enjoying a 'legally recognizable and

protectable property interest in his idea' such as by being prevented from registering the domain

name for a website or being denied access to a database he created."); *Thyroff v. Nationwide Mut. Ins. Co.*, 2007 NY Slip Op 2442, ¶ 8, 8 N.Y.3d 283, 291-92, 832 N.Y.S.2d 873, 878-79, 864 N.E.2d 1272, 1277-78 ("New York courts have held that the former bar on claims of conversion for intangible property is no longer applicable."). Relevant to this matter, District Courts in other jurisdictions addressing this issue have found specifically that phone numbers may be the subject of claims for conversion. *Staton Holdings v. First Data Corp.,* No. 3:04-CV-2321-P, 2005 U.S. Dist. LEXIS 47190, at *14-15 (N.D. Tex. May 11, 2005) (holding that a cause of action for conversion lies with regard to a telephone number); *Cmty. Voice Line, L.L.C. v. Great Lakes Commun. Corp.*, 18 F. Supp. 3d 966, 982 (N.D. Iowa 2014) (holding that "a conversion claim would lie concerning disconnection and transfer of a telephone number, because a particular telephone number may have immense value to a particular party").

Freedom has alleged facts that support a conversion claim based on the above cases. Freedom explained that it had been using the Relevant Phone Numbers for its business and, at some point, Defendant diverted the Relevant Phone Numbers away from Freedom. (AC ¶36-38). Defendant exercised unauthorized control over the Relevant Phone Numbers and to this day has still not provided Freedom with ownership of them. (AC ¶38). The Relevant Phone Numbers are used in advertising for Freedom, to generate leads and business for Freedom, and were used in CHL, and then Freedom's, ongoing business with police and fire unions and other lead sources and customers. (AC ¶11-14, 16, 17, 19).  Therefore, they are highly valuable assets. *Id.* The Relevant Phone Numbers are highly valuable and New York law permits intangible property to be the subject of a conversion claim. Therefore, Freedom has sufficiently stated a claim for conversion and its claim should not be dismissed.

**C.    Freedom Was Not Required To Demand That The Phone Numbers Be Returned To State A Valid Claim Of Conversion**

Defendant alleges that for Freedom's conversion claim to survive a motion to dismiss, Freedom was required to demand that Defendant return the phone numbers to Freedom. Defendant admits that Freedom has demanded the return of the 800 Number but alleges that Freedom has not demanded that Defendant return the 718 Number or the Phone Numbers.

However, an actual "demand" for the return of property is futile, where "circumstances show that the defendant knows it has no right to the goods." *Friedman v. Wahrsager*, 848 F. Supp. 2d 278, 296-97 (E.D.N.Y. 2012) *quoting State v. Seventh Regiment Fund*, 98 N.Y.2d 249, 260, 774 N.E.2d 702, 746 N.Y.S.2d 637 (2002). Where defendant had full information relating to his own defect in title and the identity of the true owner, the rule requiring demand and refusal in order to bring such an action does not apply. *See American Fin. Servs. Group, Inc. v. Treasure Bay Gaming & Resorts, Inc.*, No. 99 Civ. 1068, 2000 U.S. Dist. LEXIS 8668, *39 n.7 (S.D.N.Y. June 23, 2000) ("Although demand for return of property by the aggrieved party is generally an essential element of conversion, no formal demand for return is necessary where the person having possession, even lawful in the first instance, is informed of the true facts.").

In this matter, Defendant was aware that he was not the true owner of the Relevant Phone Numbers and developed a scheme of fraud to make sure he could keep the Relevant Phone Numbers knowing that he was not the true owner. (AC ¶37). Based on these facts and the relevant case law above, Freedom was not required to make a demand for the Relevant Phone Numbers prior to making a claim of conversion because the demand would have been futile as can be seen by the fact that when Freedom requested that Defendant transfer the 800 Number back to Freedom, he refused. (AC ¶38). Therefore, Freedom has sufficiently plead a claim for conversion.

8

## IV.     <u>FREEDOM MORTGAGE HAS STATED A CLAIM FOR FRAUD</u>

To set forth a *prima facie* claim of fraud, a plaintiff must show that (1) the defendant made a material false representation; (2) the defendant intended to defraud the plaintiff thereby; (3) the plaintiff reasonably relied upon the representation; and (4) the plaintiff suffered damage as a result of such reliance. *See Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*, 98 F.3d 13, 19 (2d Cir. 1996) (internal citations omitted). Claims of fraud must be plead with particularity pursuant to *Fed. R. Civ. P.* 9(b). The plaintiff must "(1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent." *Ellington Credit Fund, LTD. v. Select Portfolio Servicing, Inc.*, 837 F. Supp. 2d 162, 196-97 (S.D.N.Y. 2011) *quoting Harsco Corp. v. Segui*, 91 F.3d 337, 347 (2d Cir. 1996).

When a fraud claim is brought along with a breach of contract claim, "a plaintiff must either: (i) 'demonstrate a legal duty separate from the duty to perform under the contract'; (ii) 'demonstrate a fraudulent misrepresentation collateral or extraneous to the contract'; or (iii) 'seek special damages that are caused by the misrepresentation and unrecoverable as contract damages.'" *Ellington Credit Fund, LTD. v. Select Portfolio Servicing, Inc.*, 837 F. Supp. 2d 162, 197-98 (S.D.N.Y. 2011) *quoting Bridgestone/Firestone, Inc.*, 98 F.3d at 20 (citations omitted).

Defendant argues that Freedom's AC does not sufficiently plead the elements of fraud with specificity under *Fed. R. Civ. P.* 9(b). However, this is simply not the case. Freedom has specifically alleged that:

- Defendant represented that he would abide by the applicable non-compete provisions even though he never intended to comply (AC ¶87);

- that he sold the 800 Number, the 718 Number and the Phone numbers to Freedom even though he intended to keep those assets to compete with Freedom at a later point in time (AC ¶88);

- that he knew those representations were materially false and made them with the intent to deceive and defraud Freedom (AC ¶89);

- that he forwarded those numbers to Freedom during the time he was employed at Freedom rather than transferring ownership as he had represented he would (AC ¶18);

- that Defendant affirmatively concealed the fraudulent nature of his representations while keeping control of the phone numbers in question and paying the bills himself so Freedom would not realize that he had failed to transfer the phone numbers in question (AC ¶91);

- that he then forwarded the phone numbers away from Freedom and to Freedom's competitors, including CrossCountry (AC ¶47, 57);

- that Freedom was, in fact, deceived by Defendant (AC ¶90);

- that Freedom relied on those misrepresentations (AC ¶94); and

- that Freedom suffered damages as a result, including diverted leads and customers which resulted in loss of business (AC ¶48, 92, 94, 96).

Freedom's complaint alleges not only that Defendant breached both the APA and the EA but that he engaged in a calculated scheme to defraud Freedom of assets, leads, and customers by

10

not only failing to transfer the Relevant Phone Numbers to Freedom in violation of the APA and working for a direct competitor in violation of the EA, but by concealing the fact that he was keeping the Relevant Phone Numbers and advertising with them while working for Freedom to secretly redirect leads and customers from Freedom for his own benefit and knowing that the Relevant Phone Numbers belonged to Freedom and that Freedom had relied on that fact. Freedom's complaint certainly sets forth sufficient facts to plead the elements of fraud with the specificity required under *Fed. R. Civ. P.* 9(b) including a detailed description of the statements and omissions Defendant made (or did not make), the timing of the statements, and facts which indicate that Defendant intended to deceive Freedom as set forth above.

Additionally, this Court has held that "'[u]nlike a misrepresentation of future intent to perform, a misrepresentation of present facts is collateral to the contract . . . and therefore involves a separate breach of duty.'" *Senior Health Ins. Co. v. Beechwood Re Ltd.*, 345 F. Supp. 3d 515, 528 (S.D.N.Y. 2018) *quoting First Bank of Americas v. Motor Car Funding, Inc.*, 257 A.D.2d 287, 690 N.Y.S.2d 17, 20-21 (1st Dep't 1999). With regard to distinguishing Freedom's fraud claim from its breach of contract claim, Freedom is not merely alleging that (1) Plaintiff failed to transfer assets in violation of the APA, and (2) that he violated the non-compete provision in the EA. Freedom, as set forth above, is alleging a much more contrived and malicious scheme of fraud by way of Defendant. Defendant specifically failed to tell Freedom that he retained the Relevant Phone Numbers at the time the parties were negotiating both the APA and the EA. In an effort to deceive Freedom and lead Freedom to believe that the Relevant Phone Numbers had been transferred, Defendant had the numbers forwarded to Freedom during his employment, all the while knowing that he would have the Relevant Phone Numbers diverted away from Freedom once he was no longer employed by Freedom.

11

Finally, Freedom's claim for fraud should not be dismissed where Freedom has made a claim for disgorgement of profits that would not otherwise be available under its breach of contract claim. *See Twelve Sixty LLC v. Extreme Music Library Ltd.*, No. 17-cv-1479 (PAC), 2018 U.S. Dist. LEXIS 7026, at *19 (S.D.N.Y. Jan. 9, 2018) *quoting Pot Luck, LLC y. Freeman*, No. 06-cv-10195, 2010 U.S. Dist. LEXIS 23473, 2010 WL 908475, at *2 (S.D.N.Y. Mar. 8, 2010) ("disgorgement of profits is unavailable under New York contract law."). Contrary to Defendant's assertions in his moving papers, a breach of the duty of loyalty is not required for disgorgement of profits. The case Defendant cites to, *Pure Power Boot Camp, Inc. v. Warrior Fitness Boot Camp, LLC*, does not stand for that proposition but instead, provides that disgorgement of profits can be awarded in such a case. *Pure Power Boot Camp, Inc. v. Warrior Fitness Boot Camp, LLC*, 813 F. Supp. 2d 489, 523 (S.D.N.Y. 2011) ("an employer alleging a breach of the common law duty of loyalty against an employee may choose whether to seek damages (1) through an accounting of the disloyal employee's gain (profit disgorgement) or (2) as a calculation of what the employer would have made had the employee not breached his or her duty of loyalty to the employer"). Disgorgement of profits may also be awarded in cases of fraud. *See e.g. SEC v. Cavanagh*, 445 F.3d 105, 119 (2d Cir. 2006) *quoting United States ex rel. Taylor v. Gabelli*, 2005 U.S. Dist. LEXIS 26821, No. 03 Civ. 8762, 2005 WL 2978921, at *5 (S.D.N.Y. Nov. 4, 2005) (describing disgorgement of profits from fraud as "a 'classic' restitutionary remedy inherently distinct from compensable damages" awarded at law).

Based on the above, Freedom has plead its fraud claim with specificity and met the legal requirements to distinguish its fraud claim from its breach of contract claim. Therefore, Freedom's fraud claim should not be dismissed.

**V.**     **FREEDOM MORTGAGE HAS STATED A CLAIM FOR UNFAIR COMPETITION**

To state a *prima facie* claim for unfair competition, "a party must allege 'that the [d]efendant[] misappropriated the [p]laintiff['s] labors, skills, expenditures, or good will and displayed some element of bad faith in doing so.'" *Bancorp Servs., LLC v. Am. Gen. Life Ins. Co.*, 2016 U.S. Dist. Lexis 18330, *32 (S.D.N.Y. Feb. 11, 2016) *quoting BanxCorp v. Costco Wholesale Corp.*, 723 F. Supp. 2d 596, 617 (S.D.N.Y. 2010) (quotation omitted)).

Defendant argues that Freedom's unfair competition claim must be dismissed where it is duplicative of Freedom's breach of contract claim. Defendant cites to *Bytemark, Inc. v. Xerox Corp.* for the premise that this claim is duplicative because Freedom does not allege that Defendant "engaged in wrongful conduct extraneous to the relevant contracts." (Def's. Motion to Dismiss, pg. 12). However, that case explains that, as in the case at bar, an unfair competition claim is not duplicative of a breach of contract claim where the plaintiff "has not simply reasserted that [Defendant] has breached and/or inevitably will breach the terms of the [contracts]. Rather, the complaint relies upon [Defendant's] fraudulent and deceptive misappropriation…without centering on the contractual dispute between the parties." *Bytemark, Inc. v. Xerox Corp.*, 342 F. Supp. 3d 496, 509-10 (S.D.N.Y. 2018) *quoting Amphenol Corp. v. Paul*, No. 3:12 Civ. 543 (AVC), 2013 U.S. Dist. LEXIS 202741, 2013 WL 12251356, at *7 (D. Conn. Mar. 28, 2013).

Here, it is clear on the face of the complaint that Freedom has pled facts sufficient to support a *prima facie* showing of unfair competition where it has alleged that Defendant misappropriated the Relevant Phone Numbers in bad faith which resulted in the taking of leads and potential customers (AC ¶37-40, 44); and where it has alleged Defendant engaged in a scheme of fraud in order to deceive Freedom in an effort to retain the Relevant Phone Numbers

13

and to use them to compete with Freedom unfairly. *Id.* Based on the fact that Freedom has not merely reasserted its breach of contract claims, the unfair competition is not duplicative and should not be dismissed.

## VI.   FREEDOM MORTGAGE HAS STATED A CLAIM FOR BREACH OF CONTRACT

### A.   Breach Of Contract Standard

To state a *prima facie* case of breach of contract, a plaintiff must allege "(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages." *Harsco Corp. v. Segui*, 91 F.3d 337, 348 (2d Cir. 1996)." A plaintiff must identify what provisions of the contract were breached as a result of the acts at issue." *Ellington Credit Fund, LTD. v. Select Portfolio Servicing, Inc.*, 837 F. Supp. 2d 162, 188-89 (S.D.N.Y. 2011) *quoting Wolff v. Rare Medium, Inc*., 171 F. Supp. 2d 354, 358 (S.D.N.Y. 2001) (dismissing a breach of contract claim because plaintiffs failed to identify the contractual provisions that defendant breached). However, a plaintiff is only required to provide a short, plain notice of the claims. *Murray Eng'g P.C. v. Remke*, 2018 U.S. Dist. LEXIS 134404, at *18 (S.D.N.Y. Aug. 9, 2018).  Freedom has met this standard, thereby precluding dismissal of its breach of contract claim.

### B.   The Relevant Phone Numbers Are Purchased Assets

Defendant attempts to argue that it is an "obvious inference" that since the Relevant Phone Numbers were not listed specifically in the APA, they were not meant to be included in the Purchased Assets, but that is not an inference the court should make for the moving party at this juncture. *Koch v. Christie's Int'l Pub. Ltd. Co*., 699 F.3d 141, 145 (2d Cir. 2012) (court must "accept as true the facts alleged in the Complaint, drawing all reasonable inferences in favor of the plaintiff"). Freedom has alleged that the Relevant Phone Numbers fall squarely within the

14

definition of a Purchased Asset. (AC ¶22-27). Additionally, after mentioning "inferences" that should be made, Defendant goes on in the next sentence to say that the APA terms are unambiguous and that the Relevant Phone Numbers are not included in the definitions of Purchased Assets when looking at the plain language of same.

Under the definitions contained in the APA as set forth in the AC, "Purchased Assets" is defined in the APA to mean "all of the Seller's right, title and interest in and to and under all Assets and Properties of Seller primarily related to, used or held for use in, or otherwise necessary for, the conduct of the Business as a going concern" as well as "to the extent transferable, registrations…"[1] (AC ¶24). "Assets and Properties" is defined in the APA to mean "all assets and properties of every kind, nature, character and description (whether real, personal or mixed, *whether tangible or intangible*, whether absolute, accrued, contingent, fixed or otherwise and wherever situated), including the goodwill related thereto, operated, owned or leased by such Person, including cash, cash equivalents, investment assets, accounts and notes receivable, chattel paper, documents, instruments, licenses, contracts, *general intangibles*, real estate, equipment, inventory, goods and Intellectual Property Rights." (AC ¶25) (emphasis added). The Relevant Phone Numbers fall within the very broad definitions of Purchased Assets and/or Assets and Properties in the APA as they were "primarily related to, used or held for use in, or otherwise necessary for, the conduct of the Business."

It is hard to contemplate how Defendant can even make the argument that the Relevant Phone Numbers would not be included in these definitions on the face of the APA. The Relevant Phone Numbers were used in the course of CHL's business and were then used in the course of

---

[1] "Business" is defined in the APA as Mortgage Loan origination and servicing business of the Seller.

DMEAST #42000968 v3

Freedom's business as a primary means for customers of CHL to contact CHL and later, Freedom. (AC ¶11-19). It is also strange that Defendant attempts to dismiss the term "Assets and Properties of any Person" in a footnote when the Relevant Phone Numbers would certainly fit into that category of a Purchased Asset based on the plain language.

Freedom has alleged that the Relevant Phone Numbers were Purchased Assets under the above definitions contained in the APA because they were phone numbers associated with CHL's business and should have been transferred to Freedom at the time of the sale.[2] "At the motion to dismiss stage, a district court may dismiss a breach of contract claim only if the terms of the contract are unambiguous." *Orchard Hill Master Fund Ltd*., 830 F.3d at156; *see also Maniolos v. United States*, 741 F. Supp. 2d 555, 567 (S.D.N.Y. 2010). Here, it is Freedom's position that the terms are unambiguous in the favor of including the Relevant Phone Numbers in the definition of Purchased Assets.[3]

### C.     Defendant Breached The APA By Violating Section 4.12

Defendant alleges in a footnote that "Plaintiff's reliance on the representation and warranty in Section 4.12(a) of the APA, which has no limitations period, it misplaced." To the

---

[2] On page 15-16 of Defendant's Memorandum of Law in Support of Motion to Dismiss, he alleges that he had no substantive input into the negotiations of CHL's sale to Plaintiff. In addition to being false, this is an allegation that is not included in the AC and should not be considered, especially given the fact that Defendant was represented by counsel, Michael J. Cochran, during those negotiations. Additionally, Defendant states that if Purchased Assets consisted of everything not listed in the asset lists, the asset lists would be superfluous. This is simply not the case with regard to asset purchases. By way of example, *see In re G+G Retail, Inc.*, No. 06-10152(RDD), 2010 Bankr. LEXIS 465, at *18 (Bankr. S.D.N.Y. Feb. 24, 2010) (discussing an asset and stating a particular asset that was not listed may fall into the catch-all category of "Purchased Assets" if it is not listed among the "Excluded Assets").

[3] Even if the terms were ambiguous, all ambiguities should be interpreted in Plaintiff's favor at this stage and the parties should proceed with discovery to determine what is meant to be included in those definitions.

16

contrary, Freedom has sufficiently alleged that Defendant breached the APA by not providing Freedom with "good and valid title to the Purchased Assets" including the Relevant Phone Numbers at the time of the Closing under Section 4.12(a). (AC ¶23-27).

Based on the foregoing, Freedom has adequately plead a breach of contract claim and Defendant's motion should be denied.

### D.     Freedom Has Sufficiently Plead A Claim For Indemnification Under the APA

Defendant alleges that Freedom has failed to adequately plead entitlement to indemnification under the APA. However, it seems that Defendant wishes to set a heightened pleading standard for this contract claim without citing any support for this proposition. The cases cited by Defendant are distinguishable. In *Wiseman v. Groep*, the court dismissed the breach of contract claim where Plaintiff had "not alleged that any specific contract term required that the Insurers continue to offer a whole life or endowment policy for which Plaintiff could exchange her original policy. Instead, she has generally asserted that the Insurers were so obligated." *Wiseman v. Groep, N.V.*, No. 16-cv-07587 (AJN), 2017 U.S. Dist. LEXIS 161465, at *21 (S.D.N.Y. Sep. 28, 2017). In *Negrete v. Citibank*, *N.A.*, the Court held that "A breach of contract claim will be dismissed, however, as being too vague and indefinite, where the plaintiff fails to allege, in nonconclusory fashion, the essential terms of the parties' purported contract, including the specific provisions of the contract upon which liability is predicated." *Negrete v. Citibank, N.A.*, 187 F. Supp. 3d 454, 468 (S.D.N.Y. 2016) *quoting Highlands Ins. Co. v. PRG Brokerage, Inc.*, No. 01 Civ. 2272 (GBD), 2004 U.S. Dist. LEXIS 83, 2004 WL 35439, at *8 (S.D.N.Y. Jan. 6, 2004) (internal citations omitted).

Even the cases cited by Defendant do not require plaintiffs to plead a breach of contract claim with such specificity. Freedom has quoted all of the sections of the contract relevant to the

17

indemnification claim in the AC. These are not conclusory allegations of contractual provisions described in *Negrete*. In fact, Freedom has specifically alleged the following with regard to its indemnity claim:

- Defendant is responsible to indemnify under Section 9 of the APA; (AC ¶62-74)

- The indemnification is based on certain loans not being compliant with Section 4.20 of the APA; *Id.*

- Freedom provided the required notices to the Shareholder Representative in 2015 under Section 9.8 of the APA; *Id.*

- The notices were sent within the 3-year period under Section 9.1 of the APA; *Id.;* and

- Therefore, the claim is timely under Section 9.1(c) of the APA. *Id.*[4]

Defendant alleges that Freedom's claim fails because Defendant himself "did not have knowledge" of the indemnification claim. That, quite frankly, is not Freedom's problem. Freedom has alleged that it provided notice to the Shareholder Representative who was authorized to receive such notice on Defendant's behalf pursuant to the appropriate procedure in the APA.

Defendant also alleges that Freedom's claim fails because of "material prejudice to Tschernia." Whether Defendant has suffered material prejudice is not before the Court because the Court would be required to consider facts outside of the pleadings to make that determination at this juncture.

---

[4] Defendant cites to no cases to support his argument that Freedom is required to attach a copy of the notices sent, provide more detail, state which portion of the identified contract provisions were violated, or provide any additional information with regard to this claim. In fact, it is Freedom's position that it has provided more than enough with regard to this claim under the appropriate pleading standard.

**E.      Defendant Was Not Released By Way Of The Mutual Release Agreement And Therefore, Freedom Has Stated A Claim For Indemnification**

Defendant argues that Freedom's claim for indemnification should be dismissed because he was released from such claims by way of the Mutual Release Agreement ("MRA"). It is Freedom's position that Defendant is not covered by the MRA as alleged in the AC. Surprisingly, by the end of Defendant's argument related to the MRA, he also seems to agree that he is not covered by the MRA. Specifically, Defendant states "the Shareholder Representative, did not have the authority to agree to this provision on Tschernia's behalf." If the Shareholder Representative did not have the authority to enter into the MRA on behalf of Defendant, then the MRA would not apply to him and he would still be governed by the APA and his EA, thereby rendering Defendant's argument moot.

However, even assuming Defendant wishes to continue to argue that he was covered by the release in the MRA, it is Freedom's position that Defendant is not covered by the MRA due to his challenge and breach of his EA, specifically, his challenge and breach of his restrictive covenants. (AC ¶75-77). The MRA states, in relevant part:

> WHEREAS, Buyer [Freedom] is willing to forever waive and forego such indemnity claims against the Shareholders, in exchange for each Shareholder's (1) continued compliance with the Surviving Obligations (as herein defined), including the Purchase Agreement Restrictive Covenants and the Employment Agreement Restrictive Covenants, without the Shareholder(s) asserting or contending that such covenants to not apply due to the Provisos or for any other reason, and (2) agreement to waive and forego any and all indemnity claims each or all may have against Buyer under the Purchase Agreement.
>
> …
>
> 3. Conditions and Exceptions to Buyer's Release
>
> (b)      In the event any Shareholder (i) breaches any of the Surviving Obligations, or (ii) challenges the enforceability of any of the Surviving Obligations or the Employment Agreement

> Restrictive Covenants, or (iii) asserts that one or both of the
> Provisos apply to render inapplicable or unenforceable the
> Purchase Agreement Non-Competition Covenant and/or the
> Employment Agreement Non-Competition Covenant, then Buyer's
> release of that Shareholder set forth in paragraph 2, above, if null
> and void ab initio and such Shareholder will be subject to any and
> all claims for Losses that Buyer has now or that may arise in the
> future under the Purchase Agreement.
>
> …

*See* MRA, Exhibit D to Defendant's Motion to Dismiss.  Freedom has alleged in its AC that,

because Defendant has been working for competitors and is currently challenging the validity of

the restrictive covenants in his EA, he has not been released from the obligations in the APA.

(AC ¶76-77). Additionally, Freedom has alleged that Tschernia breached the EA by working on

behalf of a competitor, CrossCountry Mortgage, originating loans less than three miles from

where he worked for Freedom, in violation of the non-compete in the EA. (AC ¶110-114). Due

to that breach, Defendant has not been released under the MRA. Freedom's allegations fall

squarely in line with the contract provisions set forth above.

     Defendant also attempts to provide legal authority for the proposition that a "no

challenge" provision is illegal as a matter of law however, a review of the case cited shows that it

is not applicable. In the *Pure Power Boot Camp* case, the court specifically considered an

Intellectual Property clause in an employment agreement. The situation was specific to that type

of provision involving the United States military and, therefore, wholly irrelevant to Freedom's

claims here. The Court held that "permanently barring an employee from challenging an

employer's alleged intellectual property — however vaguely defined — runs contrary to the

'important interest in permitting full and free competition in the use of ideas which are in reality

a part of public domain.' Plaintiffs have failed to explain what legitimate business interest they

are seeking to protect or promote, through contract, beyond that already covered by state and

federal intellectual property law, or why they are entitled to an additional layer of protection substantially restricting Defendants' freedom to use and incorporate ideas and concepts relating to the United States military — ideas and concepts to which Brenner, of course has no special claim." *Pure Power Boot Camp, Inc. v. Warrior Fitness Boot Camp, LLC*, 813 F. Supp. 2d 489, 515 (S.D.N.Y. 2011) *quoting Lear*, 395 U.S. at 670, 89 S. Ct. at 1911. As such, that case is not applicable.

Based on the foregoing, Freedom has sufficiently plead a breach of contract claim where the release in the MRA is not applicable to Defendant.

### F.      Tschernia's Restrictive Covenants Are Enforceable And Therefore, Freedom Has Stated a Breach of Contract Claim

#### 1.      *Scrivener Error Issue*

Defendant alleges that the EA non-compete provision does not prohibit Defendant from working with a competitor. He references the language in Section 6.1(a) of the EA which states:

> (i)Except as otherwise permitted under the APA… the Executive shall, and shall not permit any of their respective "Affiliates:…to, directly or indirectly, (i) engage in or assist others in engaging in the "Restricted Business"(as such term is defined in the APA); or (ii) have an interest in any  "Person" (as such term is defined in the APA) that engages directly or indirectly in the Restricted Business in the United States...
>
> …
>
> (ii) During the Restricted period, the Executive shall not, and shall not permit any of their respective Affiliates to, directly or indirectly, hire or solicit any employee of the Company or encourage any such employee to leave such employment or hire any such employee who has left such employment,…
>
> (AC ¶31).

Defendant argues that Section 6.1(a)(i) provides that Defendant "shall" (rather than "shall not") engage in competing activities with Freedom. This is simply an absurd argument and clearly a

typographical error as Freedom has alleged.[5] The cardinal rule of contract interpretation is to ascertain and "give effect to the expressed intentions of the parties." *In re Motors Liquidation Co.*, 460 B.R. 603 (Bkrtcy S.D.N.Y. Nov. 28, 2011). In addition, courts will avoid interpreting contracts in a manner that would be "absurd, commercially unreasonable, or contrary to the reasonable expectations of the parties." *SPCP Grp., LLC v. Eagle Rock Field Servs., LP,* 2013 U.S. Dist. LEXIS 12729, at *2 (S.D.N.Y. Jan. 30, 2013). Courts should also read the contract as a whole and should not read one provision in a vacuum. If Defendant's interpretation of the contract were accepted and we removed the portion of the provision related to Defendant's "Affiliates," the provision would read "the Executive shall, …directly or indirectly, (i) engage in or assist others in engaging in the "Restricted Business"(as such term is defined in the APA); or (ii) have an interest in any  "Person" (as such term is defined in the APA) that engages directly or indirectly in the Restricted Business in the United States.." Basically, the provision would be **<u>requiring</u>** Defendant to compete with Freedom which is an absolutely absurd result.

Based on the above, the contract cannot be interpreted as Defendant has suggested as a matter of law and Freedom has plead facts sufficient to allege a breach of the restrictive covenant in Defendant's Employment Agreement.

Further, even if Defendant's argument were accepted, it would simply create ambiguity which would allow the parties to conduct discovery for extrinsic evidence to determine what the

---

[5] For background, these provisions were copied from the APA when this employment contract was created. At the time, they included the term "shareholder" which was not applicable in the context of this contract. In the editing of these provisions, 6.1(a)(i) and 6.1(a)(ii), the language was edited appropriately for section (ii) but a word was left out in section (i). Freedom has correspondence which shows that Section 6.1(a)(i) was also supposed to say "Executive shall not, and shall not permit…" That was the intent of the parties which will come to light during discovery.

provision was intended to say.[6] *Travelers Indem. Co. v. Scor Reinsurance Co.*, 62 F.3d 74, 78

(2d Cir. 1995); *see also Serdarevic v. Centex Homes*, LLC, 760 F. Supp. 2d 322, 328 (S.D.N.Y.

2010) ("...[t]he Court may resolve issues of contract interpretation when the contract is properly

before the Court, but must resolve all ambiguities in the contract in Plaintiffs' favor.").

### 2.    *The EA Restrictive Covenant Is Enforceable*

In his motion to dismiss, Defendant argues that the non-compete contained in

Defendant's EA is unenforceable. Freedom disagrees. What Defendant fails to consider is that

the restrictive covenants in Defendant's EA should be evaluated under the relaxed "sale of

business" standard. *See Payment All. Int'l, Inc. v. Ferreira,* 530 F. Supp. 2d 477, 483 (S.D.N.Y.

2007). The relevant facts here are comparable to those in *Payment All Int'l.* In that case, the

defendant was partial owner of a company and when it was bought out, defendant was hired as

an employee. Defendant was sued by her former employer for breach of contract related to a

restrictive covenant contained in her employment agreement after she went to work for a direct

competitor shortly after leaving her position. The court applied the relaxed standard for "sale of

business." The court cited to another similar case where "the court treated a restrictive covenant

assumed by an employee with minority ownership interest as ancillary to a sale of a business.

*Misys Intern. Banking Systems, Inc. v. Two Four Systems, LLC,* 6 Misc.3d 1004(A), 2004 WL

3058144, 2004 N.Y. Misc. LEXIS 2865 (N.Y.Sup.Ct. 2004); *see also Mathias v. Jacobs*, 167

F.Supp.2d 606, 611 (S.D.N.Y. 2001) (stating that "[r]estrictive covenants in this context are

---

[6] Defendant incorrectly and somewhat disingenuously states that Freedom was the "scrivener" and should not, therefore, benefit from its own mistake. This is not the case. Defendant was represented by experienced counsel, Michael J. Cochran, in the negotiations of the APA and EA and Defendant's current attorney was made aware of that fact. Defendant's counsel with regard to the APA and EA was intricately involved in the negotiations and editing of those agreements. As such, Defendant was not the scrivener, or at the least not the sole scrivener.

routinely', enforced because the buyer has in part bargained for the good of the seller's customers" and finding that the two-year non-compete was a reasonable restriction, protecting the buyer's legitimate interest in the goodwill it bargained for when it purchased the business).

Under the sale of business standard, a covenant restricting the right of a seller of a business to compete with buyer is enforceable if its duration and scope are "reasonably necessary to protect the buyer's legitimate interest in the purchased asset." *Genesee Val. Trust Co. v Waterford Group*, LLC, 130 A.D.3d 1555 (2015).

Defendant was one of five shareholders of CHL. (AC ¶9). On May 30, 2014, Defendant and the other shareholders entered into an Asset Purchase Agreement with Freedom for the sale of certain CHL assets. (AC ¶20). Defendant received 5% of the purchase price. Shortly thereafter, Defendant signed the EA with Freedom. (AC ¶28).

Because employment agreements, which included restrictive covenants, were entered into with the individual shareholders upon them coming to work for Freedom, these restrictive covenants should be evaluated according to the standard applicable to restrictive covenants entered into surrounding the sale of a business. The EA provides for a 2 year restrictive covenant that is nationwide. In evaluating this particular restrictive covenant, a non-compete of this scope must be enforceable where the Defendant was an owner of another competing mortgage company and where Freedom is a national mortgage company with offices all over the country. Freedom sought to protect its legitimate business interests related to the business it bought from CHL and which, based on the allegations in the AC, Defendant was actually trying to steal.[7]

---

[7] Defendant states that Plaintiff terminated him without cause but rather, Freedom did not renew Defendant's employment contract in September of 2018 (AC 41).

DMEAST #42000968 v3

As set forth above, Freedom has stated claims for breach of contract and, as such, Defendant's motion to dismiss should be denied.

## **CONCLUSION**

For all of the foregoing reasons, Freedom has stated claims upon which relief may be granted for all five of the counts in the AC and therefore, its claims should not be dismissed.

By: /s/ *Christopher J. Kelly*
Louis L. Chodoff (admitted *pro hac vice*)
Christopher J. Kelly
Tara L. Humma (admitted *pro hac vice*)
BALLARD SPAHR LLP
210 Lake Drive East, Suite 200
Cherry Hill, NJ 08002
(856) 761-3400
*Attorneys for Plaintiff*

Dated:  August 21, 2020

DMEAST #42000968 v3